UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2005 FEB 15 A 11:16

U.S. DISTRICT COURT
DISTRICT OF MASS.

------------------------------X

IN RE: Request from Belgium )
Pursuant to the Treaty )
Between the United States of )
America and the Kingdom of ) Criminal No._____
Belgium on Mutual Assistance )
in Criminal Matters in the )
Matter of JACQUES LEFEBVRE )

------------------------------X

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER

The United States is seeking an Order appointing a Commissioner to collect evidence requested by the Netherlands in its attached Treaty Request made pursuant to the Treaty between the United States of America and the Kingdom of Belgium on Mutual Assistance in Criminal Matters, signed January 28, 1988, entered into force on January 1, 2000, (U.S.T. 100-16, T.I.A.S. 2096 UNTS 3), [hereinafter referred to as "the Treaty"]. A treaty constitutes the law of the land. U.S. Const. art. VI. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. Asakura v. City of Seattle, Washington, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. United States v. Erato, 2 F.3d 11, 15-16 (2d Cir. 1993).

A.  <u>The Treaty</u>

The United States and the Kingdom of Belgium entered into the Treaty for the purpose of promoting mutual legal cooperation in criminal matters. The Treaty obliges each state to provide mutual legal assistance to the other in investigations of offenses covered under the Treaty and in court proceedings related to such offenses. Article 1. Such assistance expressly contemplated by the Treaty includes, among other things, the taking of testimony and or statements of persons and the production of documents, records, and other evidence. Article 1; see <u>Barr v. U. S. Department of Justice</u>, 645 F. Supp. 235, 237 (E.D.N.Y. 1986), <u>aff'd</u>, 819 F.2d 25 (2d Cir. 1987).

The Treaty obligates the authorities of the Requested State to do everything within their power to execute a request for assistance and authorizes the courts of the Requested State "to issue subpoenas, search warrants or other orders necessary to execute the request. Article 16(1).

B.  <u>Use of the Treaty to Execute Requests for Assistance</u>

The Treaty is self-executing and requires no implementing legislation. <u>See</u> Letter of Submittal of Treaty to the President from the Department of State dated March 11, 1988. In executing Belgian requests, the Treaty obligates the courts to follow its domestic law and procedures except to the extent that the Treaty provides otherwise. The Treaty states, at Article 16(2), that:

Procedures specified in the request, even if unfamiliar to the Requested State, shall be followed except to the extent specifically prohibited by the laws of the Requested State.

Consequently, federal district courts routinely utilize the "commission" procedure authorized by 28 U.S.C. §1782, the statute governing the provision of assistance for foreign judicial proceedings generally, to fulfill their judicial responsibility under the Treaty of executing Belgian requests.

1. Appointment of a commissioner

Section 1782 provides in pertinent part that:

> The district court . . . may direct that the testimony or statement [of a person who resides or is found within the district] be given or the document or other thing be produced, before a person appointed by the court.

A federal district court customarily appoints or "commissions" a person ("commissioner") to collect evidence on behalf of the court and authorizes the commissioner to submit the evidence collected to the requesting foreign court or authority. With requests for assistance in criminal matters, a court typically appoints an Assistant United States Attorney as commissioner. However, a court also may commission a foreign authority together with (or in lieu of) an Assistant United States Attorney. See, e.g., In re Letter of Request from the Supreme Court of Hong Kong, 138 F.R.D. 27, 29 (S.D.N.Y. 1991) [hereinafter Hong Kong].

3

Application to a federal district court for appointment of a commissioner to execute a foreign request for judicial assistance is handled <u>ex parte</u>.  <u>In re Letter of Request from the Crown Prosecution Service of the United Kingdom</u>, 870 F.2d 686, 688 (D.C. Cir. 1989); <u>In re Letters Rogatory from the Tokyo District, Tokyo, Japan</u>, 539 F.2d 1216, 1219 (9th Cir. 1976).

2.  <u>Establishment of an evidence-collecting procedure</u>

Section 1782 further provides in pertinent part that:

> To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A federal district court empowers a commissioner to collect the evidence using the procedure prescribed by the court.  A court has "complete discretion in prescribing the procedure to be followed."  Sen. Rep. No. 1580, 88th Cong., 2d Sess. 1 (1964), <u>reprinted in</u> 1964 U.S. Code Cong. & Admin. News 3782, 3789.  When a court's order fails to specify a procedure by which a commissioner is to collect the evidence, the Federal Rules of Civil Procedure apply.  <u>In re: Letters Rogatory from the Tokyo District Prosecutor's Office, Tokyo, Japan</u>, 16 F.3d 1016 (9th Cir. 1994); <u>Hong Kong</u>, 138 F.R.D. at 32.  However, as Section 1782 makes clear, when a court does specify a procedure other than one in accordance with the Federal Rules of Civil Procedure,

4

the alternative procedure shall apply.  <u>In re Letter of Request from the Government of France</u>, 139 F.R.D. 588, 590-591 (S.D.N.Y.

    a.   <u>Commissioner's subpoena</u>

The Treaty contemplates that federal district courts will use compulsory measures to execute Belgian requests.  The Treaty provides, at Article 6(1), that:

> A person from whom evidence is sought shall, if necessary, be compelled by subpoena to appear and testify or produce documents, records and articles to the same extent as in investigations or proceedings in the Requested State.

If a federal district court so orders, a commissioner may use the attached form, entitled commissioner's subpoena, to obtain the requested evidence.  <u>See</u>, e.g., <u>United States v. Erato</u>, 2 F.3d 11, 12-13 (2d Cir. 1993) (incorporating in pertinent part the district court's order directing the use of commissioner's subpoenas).  The commissioner's subpoena is a creation of neither the Federal Rules of Criminal Procedure nor the Federal Rules of Civil Procedure, but is an order of the court for the production of evidence in accordance with both the Treaty and Section 1782.  <u>See</u> Article 5(1); 28 U.S.C. 1651.  Upon authorization by a court, a commissioner may issue such commissioner's subpoenas as are necessary to execute the request.

    b.   <u>Notice of evidence taking</u>

Inasmuch as grand jury and criminal trial subpoenas are

issued without notice to other than the recipients (i.e., no notice to targets, defendants, or third parties), commissioner subpoenas issued in execution of Belgian requests likewise should require no notice to other than the recipients. Accordingly, a federal district court should authorize a commissioner to collect the evidence requested without notice to any party other than the recipient of the commissioner's subpoena except to the extent that a Belgian request asks for specific notice procedures.[1]

C.  The Present Request

The instant Treaty Request has been made by the Kingdom of Belgum, the Central Authority under Article 17 of the Treaty, in connection with a current criminal investigation by the Court of First Instance in Brussels, Belgium.

D. Fransen, Examining Magistrate at the Court of First

---

[1] Historically, United States authorities have executed requests for judicial assistance in criminal matters without notification to actual or potential targets of investigations, or even to parties in proceedings, in order to protect against compromising foreign investigations and proceedings. Moreover, United States authorities customarily rely on the requesting courts and authorities to provide such notice directly to the relevant parties as foreign law requires. Finally, requesting courts and authorities routinely request that United States executing authorities follow particular, stated notice procedures when such procedures are necessary or useful under the foreign law or practice. For example, foreign requests frequently ask (1) that a person to be interviewed (generally a defendant or suspect) be given notice of applicable testimonial privileges (e.g., against self-incrimination) at the time of the interview and (2) that a defendant and defense counsel be permitted to be present during the taking of testimony of a witness and be given sufficient notice to make arrangements.

Instance in Brussels, is investigating several individuals on charges of corruption and fraud. On November 29, 1989, the Belgian government notified the Belgian Aeronautics Construction Public Company (SABCA) that they were interested in renovating twenty *Mirages V* airplanes under the Mirage Safety Improvement Program (MIRSIP). In an effort to reduce military spending however, National Defense Minister Leo Delcroix announced in January 1993, that the twenty *Mirages V* airplanes would not be reintroduced into the fleet. As a result, the Belgian government decided to complete the renovations on the planes and sell them on the international market. The National Defense Minister awarded the contract of selling the *Mirages V* airplanes to SABCA. SABCA was able to locate numerous international clients for the airplanes through their affiliation with Europavia S.A., a Belgian subsidiary of L'Office General de L'Air (OGA), a French company specializing in the promotion of aeronautical equipment.

In January 1994, SABCA decided to sell the *Mirages V* airplanes and other supplies to the Chilean government. On February 23, 1994, SABCA submitted two contracts in the amount of $109,000,000 to the National Ducroire Office (OND), the Belgian export insurance organization. One contract was in the amount of $70,000,000 and the other was in the amount of $39,000,000. The OND rejected the agreement because $15,000,000 of the $39,000,000 contract was allotted for commissions to unknown beneficiaries.

As a result, revisions were made to the contract to reflect an initial sale of the *Mirages V* fleet on behalf of the Belgian government for $70,000,000 to SABCA, followed by a second sale on behalf of SABCA to the Chilean Air Force for $109,000,000. SABCA believed that these revisions would conceal the distribution of the $15,000,000 in commissions, therefore making OND accept the agreement.

An investigation conducted by Belgian authorities of other secret commissions resulting from the sale of military equipment led authorities to search the headquarters of Europavia S.A. and the home of General J. LEFEBVRE. Authorities found documents in these locations that demonstrated LEFEBVRE's involvement in the distribution of the commissions resulting from the *Mirages V* airplane sale. Specifically, the commission in the amount of $15,000,000 was subject to an initial sharing, where approximately $550,000 was intended for Europavia S.A. and OGA and the remaining $14,450,000 was intended for Berthier Investment, Inc. The commission for Berthier Investment, Inc. was then divided amongst various bank accounts throughout the world.

The Examining Magistrate at the Court of First Instance in Brussels has requested the following assistance from U.S. authorities in the District of Massachusetts:

> Obtain any and all bank records regarding the
> transfers listed in the attached request for

assistance for the following accounts at **Bay Bank, now Bank of America**, located at 175 Federal Street, Boston, Massachusetts, including information regarding the current balance as well as all withdrawals, deposits, credits, powers of attorney and beneficiaries:

Account number **231-194-7**, from January 1, 1994 to the present and

Any accounts related to the following individuals and companies:
**ESSCO
Bernard Van Meer
Ramon Vega Hidalgo
Veronica Vega Pizarro
Rosa Vega Pizarro
Limelight Ltd.
Carlos Honzik
Henriette Bahna-Hamwi
Berthier Investment, Inc.**

Accordingly, to execute this request, the government hereby moves this Court to issue the Order attached hereto as Exhibit A appointing Assistant United States Attorney Brian T. Kelly as Commissioner, authorizing him to take the actions necessary, including the issuance of Commissioner's subpoenas, to obtain the evidence requested, and to adopt such procedures in receipt of the evidence as are consistent with the intended use thereof in Belgium.

Respectfully submitted,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By: /s/ Brian T. Kelly
BRIAN T. KELLY
Assistant U.S. Attorney